**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 30 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SARAH ANGEL,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant-Appellee.

No. 02-7072

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CIV-01-188-P)**

---

Submitted on the briefs:

Kyle J. Saunders of Saunders and Saunders, Ada, Oklahoma, for Plaintiff-Appellant.

Sheldon J. Sperling, United States Attorney, Tina M. Waddell, Regional Chief Counsel, Michael McGaughran, Deputy Regional Chief Counsel, and James A. Garrett, Assistant Regional Counsel, Office of the General Counsel, Social Security Administration, Dallas, Texas, for Defendant-Appellee.

---

Before **SEYMOUR** , **KELLY** , and **LUCERO** , Circuit Judges.

---

**KELLY** , Circuit Judge.

Plaintiff-appellant Sara Angel appeals from the district court's order affirming the Commissioner's denial of her application for disability insurance benefits and supplemental security income benefits under the Social Security Act.[1] We exercise jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000).

Angel claims that she has been disabled for the relevant time period of July 24, 1997, through December 31, 1999[2] as a result of back and bladder impairments. After Angel's application for benefits was initially denied, a de novo hearing was held before an administrative law judge (ALJ). In a decision dated January 21, 2000, the ALJ determined, at step three of the five-part sequential evaluation process for determining disability, that Angel's back impairment did not meet or equal the impairment listing for vertebrogenic

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[2] The ALJ determined that this is the relevant time period for determining whether Angel was disabled, and Angel is not challenging the ALJ's determination in this appeal. Like the ALJ, we will examine medical evidence generated prior to July 24, 1997, "only for purposes of establishing a baseline from which to evaluate [Angel's] medical status." Aplt. App. at 36.

disorders of the spine, listing 1.05C.      *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1,

§ 1.05C (1999).  The ALJ then determined at step four of the evaluation process

that Angel was not disabled.  First, the ALJ concluded that, while Angel suffers

from severe back and bladder impairments, she has the residual functional

capacity to perform a wide range of light work subject to the limitations of

"lifting no more than 10 pounds on a frequent basis and no more than a maximum

of 20 pounds, standing or walking for no more than 2 hours at a time, or for

longer than 6 hours during an eight hour day, only occasional stooping, and a

need to self catheterize her bladder for 10 [to] 15 minutes every 2 to 2½ hours

during the work day." [3]  Aplt. App. at 37-38.  Second, based on the testimony of

the vocational expert concerning the residual functional capacity necessary to

perform her past relevant work, the ALJ determined that Angel was capable of

performing her past relevant work as an insurance clerk, receptionist, accounts

payable clerk, senior office assistant, convenience store clerk, and barmaid.

*Id.* at 38.

In February 2001, the Appeals Council denied Angel's request for review

of the ALJ's decision.  Angel then filed a complaint in the district court.  In

---

[3]      The ALJ did not specify the sources he relied on to determine Angel's
physical limitations, but it appears that he relied primarily on the report prepared
by Dr. Vallis D. Anthony.    *See* Aplt. App. at 298-305.  Dr. Anthony was retained
by the Commissioner to evaluate Angel's medical records.      *See* Aplee. Br. at 5.

March 2002, the district court entered an order affirming the ALJ's decision denying Angel's application for benefits. This appeal then followed.

In this appeal, Angel claims that: (1) the ALJ erred at step three in rejecting the opinion of her treating osteopath, Dr. Schneider, that her back impairment meets or equals listing 1.05C; (2) the ALJ erred at step four by failing to address all of the relevant evidence in the record concerning the process she must undergo to catheterize herself; (3) the ALJ erred at step four by failing to provide sufficient reasons for rejecting her testimony and her treating physician's opinions regarding the limitations imposed by her back pain and problems; and (4) she does not have the residual functional capacity to perform her past relevant work.

Having thoroughly reviewed the record and the pertinent legal authorities, we conclude that the ALJ's finding at step three that Angel's back impairment does not meet or equal listing 1.05C is supported by substantial evidence in the record. However, we agree with Angel that the ALJ erred at step four by failing to address all of the relevant evidence in the record concerning the process she must undergo to catheterize herself. We also agree with Angel that the ALJ erred at step four by failing to provide sufficient reasons for rejecting her testimony and her treating physician's opinions regarding the limitations imposed by her back pain and problems. Accordingly, we reverse the order of the district court

-4-

affirming the ALJ's decision denying benefits, and we remand this matter for further proceedings before the ALJ. [4]

    1.  Listing 1.05C.

    Listing 1.05C provides as follows:

> C.  Other vertebrogenic disorders (e.g., herniated [disk], spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
>
> 1.  Pain, muscle spasm, and significant limitation of motion in the spine; and
>
> 2.  Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.05C (1999). [5] Although the listing does not define the term "vertebrogenic disorder," another section of the listing regulations, which specifically cross-references § 1.05C, states that it includes disorders that result in impairment "because of distortion of the bony and ligamentous architecture of the spine or impingement of a herniated [disk] or bulging annulus on a nerve root." *Id.* at § 1.00B.

---

[4]    Given the nature of our remand, we do not address Angel's claim that she does not have the residual functional capacity to perform her past relevant work, and we leave that issue for the ALJ to reconsider on remand.

[5]    Listing 1.05C was revised in 2002, and it is now listing 1.04. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04 (2002).

Angel's treating osteopath, Dr. Schneider, testified at the hearing before the ALJ that Angel met or equaled listing 1.05C. According to Dr. Schneider, "[Angel] actually meets number one. Number two on that, the bladder dysfunction and her lack of tenacity or lack of reflex there, I think she meets it or equals that criteria." Aplt. App. at 68. As this quote makes clear, Dr. Schneider only addressed the two sub-parts of listing 1.05C, and she did not specifically address the threshold issue under the listing of whether Angel suffered from a vertebrogenic disorder of the spine during the relevant time period of July 24, 1997 through December 31, 1999. Further, there is no evidence in the record that Angel suffered from a vertebrogenic disorder of the spine during the relevant time period.

The record shows that Angel injured her back in a work-related incident in October 1994, and she underwent a right hemilaminectomy and disk excision in May 1995 to repair a herniated disk at L5-S1. *Id.* at 154-56, 158-59. An MRI subsequently taken in February 1997 showed no definite evidence of any recurrent disk herniation at L5-S1. *Id.* at 202. Although the February 1997 MRI did show disk degeneration at L5-S1 and a mild bulging of the disc at L4-5, an electromyogram (EMG) performed at the same time showed no definite evidence of active lumbar radiculopathy in Angel's lower extremities. *Id.* at 201. Based on the EMG results, Dr. Benner, Angel's neurosurgeon, reported to her at the time

-6-

that there were "no signs of any nerve root damage or irritation" in the area of her prior surgery. *Id.* at 177.

During her testimony at the hearing before the ALJ in November 1999, Dr. Schneider testified that it was her belief that Angel "probably" had a "new" herniated disk at L4-L5. *Id.* at 64. Dr. Schneider admitted, however, that she did not have any objective medical evidence to support her testimony. *Id.* at 72. In fact, an MRI taken in December 1998 showed no evidence of a herniated disk at L4-L5 or elsewhere on Angel's lumbar spine. [6] *Id.* at 208. On January 25, 2000, a little over a month after the hearing before the ALJ, Dr. Schneider referred Angel for another MRI, and that MRI also showed no evidence of a herniated disk in Angel's lumbar spine. [7] *Id.* at 387.

In her brief on appeal, Angel has admitted that her back problems do not satisfy listing 1.05C standing alone. *See* Aplt. Br. at 14. To overcome this failure of proof, Angel argues that the ALJ erred by failing to consider her bladder problem in combination with her back problems in determining whether she met

---

[6] The December 1998 MRI also showed no evidence of spinal stenosis. *See* Aplt. App. at 208.

[7] The Appeals Council made the January 25, 2000 MRI a part of the administrative record, and it considered it in reviewing the ALJ's decision. *See* Aplt. App. at 14, 16, 387. Even though the MRI was performed four days after the ALJ issued his decision, we may consider it as part of the record on appeal since it provides material evidence relating to the period before the ALJ's decision. *See O'Dell v. Shalala*, 44 F.3d 855, 858-59 (10th Cir. 1994).

or equaled listing 1.05C. *Id.* at 14-15. We disagree. At most, Angel has only shown that her urologist, Dr. Forrest, has opined that her bladder problem "most likely arises from old spinal cord disease," Aplt. App. at 385, and that the bladder problem "is more than likely associated with nerve changes present within the spinal cord causing the resulting hypotonicity of the bladder," *id.* at 390. [8] Angel has failed, however, to put forth any specific medical evidence linking her bladder problem to a vertebrogenic disorder of the spine such as the herniated disk she sustained in October 1994. *Id.* at 177 (medical record of Dr. Benner noting that he did not "have an explanation for [Angel's] increased bladder problems, at least not in the context of [her 1995] back surgery), 385 (medical record of Dr. Forrest noting that Angel was diagnosed as having a neurogenic bladder in late 1993 or early 1994, and that he could not "speak to the point of any changes in her bladder function before or after [the 1995] spinal cord surgery, as these are not objectively documented"). Thus, we hold that the ALJ's determination that Angel does not meet or equal listing 1.05C is supported by substantial evidence in the record.

---

[8] The medical records of Dr. Forrest at pages 385 and 390 of appellant's appendix were made a part of the administrative record by the Appeals Council, and the Appeals Council considered the records in reviewing the ALJ's decision. *See* Aplt. App. at 14, 16, 385, 390. We may consider the records as part of the record on appeal since they provide material evidence relating to the period before the ALJ's decision. *See O'Dell,* 44 F.3d at 858-59.

2. Bladder Impairment.

In performing his step four analysis, the ALJ ignored and failed to address Dr. Schneider's testimony at the hearing, which is supported by her medical records, that Angel needs a sterile environment in which to catheterize herself due to the risk of infection. *See* Aplt. App. at 65, 218, 344. This omission is significant because, following Dr. Schneider's testimony, the vocational expert (VE) testified, in response to a hypothetical question posed by Angel's counsel, that the requirement of providing Angel with a sterile environment, which would basically require that she have a personal, or private, bathroom, "would have a negative impact . . . [and] would [not] preclude all employment, but it would be rather significant in reducing the occupational base." *Id.* at 77.

Dr. Schneider's testimony, and the related testimony of the VE, is supported by substantial medical evidence in the record showing that Angel is at high risk of contracting recurrent urinary tract infections. *Id.* at 261-67, 273-74, 276, 328-29, 332-33, 385, 390. We therefore agree with Angel that the ALJ's failure to address the testimony is reversible error. *See Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (noting that ALJ must provide specific and legitimate reasons for disregarding opinion of treating physician, and that "ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial

evidence in the record"); *Campbell v. Bowen*, 822 F.2d 1518, 1523 n.6 (10th Cir. 1987) (noting that ALJ may not ignore unfavorable answer by VE that is supported by substantial evidence). Thus, we remand this matter with directions for the ALJ to address Dr. Schneider's testimony regarding the requirement of a sterile environment, and the related testimony of the VE, and reconsider whether the requirement precludes Angel from performing her past relevant work.

Although Angel has not raised the issue in this appeal, we also note that the ALJ ignored and failed to address: (1) Angel's testimony at the hearing that it takes her twenty to thirty minutes to complete the catheterization process, as opposed to the ten to thirty minutes posited by the ALJ in his hypothetical to the VE,[9] *see* Aplt. App. at 53, 58, 76; and (2) the VE's testimony that, if Angel needs up to thirty minutes to catheterize herself, then the time she would be required to devote to the process during the work day is "inconsistent with typical employer expectations," *id.* at 77. Because of the potential significance of this testimony to the step four determination, the ALJ should address it as part of the step four analysis on remand.

---

[9]     We note that Dr. Schneider's records from 1997 and 1998 state that Angel needed only ten to fifteen minutes to complete the catheterization process. *See* Aplt. App. at 218, 344. However, Dr. Schneider was not questioned about this issue at the hearing before the ALJ. As a result, it is unclear based on the current record whether Dr. Schneider would oppose Angel's testimony that it actually takes her twenty to thirty minutes to complete the process.

3. ALJ's Credibility and Treating Physician Determinations.

At the hearing before the ALJ, Angel testified that, as a result of her back pain and problems, she can lift no more than a gallon of milk and she can only stand, sit, or walk for fifteen to twenty minutes at a time. *Id.* at 54-55. This is consistent with the testimony and opinions of Dr. Schneider. *Id.* at 67, 336-37, 339-40. However, the ALJ found that Angel's testimony was not credible and that Dr. Schneider's opinions were not supported by the medical evidence in the record. Angel argues that the reasons put forth by the ALJ for rejecting her testimony and the opinions of Dr. Schneider are not supported by the record. We agree.

With respect to the credibility of Angel's subjective complaints regarding her back pain and problems, the ALJ found that they were "not fully credible because, but not limited to, the objective findings, or the lack thereof, by treating and examining physicians, the lack of medication for severe pain, the frequency of treatments by physicians and the lack of discomfort shown by the claimant at the hearing." *Id.* at 37. The ALJ also found that Angel's credibility "is diminished because the objective medical evidence shows a significant lack of continuous treatment for her back and her treating physician, Dr. Schneider, did not refer her to a specialist." *Id.* With respect to Dr. Schneider's opinions, the

-11-

ALJ gave them "a reduced weight because they are not supported by any objective testing, x-rays, CT scans, MRIs, or even physical examinations." *Id.*

The ALJ's findings are not supported by substantial evidence in the record because the record shows that: (1) Angel had objective findings of back problems in the form of degenerative disk disease, one or more bulging disks, and scar tissue documented by the MRIs taken in 1997, 1998, and 2000, *id.* at 202, 208, 387, and there is no dispute that she had a herniated disk and steroid atrophy in 1995, *id.* at 154-59, 163-64, 167, 169; (2) Angel has been taking prescribed pain medication for several years; (3) Angel has been seeing Dr. Schneider for treatment of her back pain and problems for several years, although, as Dr. Schneider conceded at the hearing before the ALJ, her treatment has primarily involved providing prescriptions for pain medication, *id.* at 70-73; and (4) Angel has seen two specialists to evaluate her continuing back pain and problems (her neurosurgeon, Dr. Benner, and an orthopedic surgeon, Dr. Bazih), *id.* at 177-78, 210-11.

The ALJ may be correct that the level of treatment Angel has received for her back pain and problems is inconsistent with her and Dr. Schneider's claims regarding the severity of her back impairment. But, in the absence of a more thorough analysis and more specific findings by the ALJ, the ALJ cannot ignore the dispositive issue of whether Angel's objectively documented back problems

were capable of producing the pain and physical limitations that she and Dr. Schneider were alleging as of the time of the hearing before the ALJ. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488-90 (10th Cir. 1993) (noting that ALJ must determine whether a claimant's subjective allegations of pain are supported by objective medical evidence in the record, and setting forth criteria that ALJ must consider to determine whether a claimant has pursued and/or received medical treatment that is consistent with subjective allegations). Accordingly, we conclude that the ALJ's conclusory findings are an insufficient basis for rejecting Angel's testimony and Dr. Schneider's opinions, and we remand the step four issue of whether Angel's back impairment prevents her from performing her past relevant work to the ALJ for reconsideration. We note, however, that "[n]o particular result is dictated," *id.* at 1493, and we remand this matter only to assure "that the correct legal standards are invoked in reaching a decision based on the facts of this case," *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

The order of the district court is REVERSED, and this case is REMANDED to the district court with instructions to remand the case to the Commissioner for further proceedings before the ALJ.