**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 16 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SANDRA AVALOS,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant-Appellee.

No. 02-2331
(D.C. No. CIV-02-191 KBM)
(D. N.M.)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL** , **PORFILIO** , and **McCONNELL** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Sandra V. Avalos appeals from the magistrate judge's order affirming the Commissioner's denial of her application for Social Security benefits and Supplemental Security Income benefits. [1] The Administrative Law Judge (ALJ) found plaintiff to be not disabled at step four of the sequential evaluation process. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing sequential evaluation). We have jurisdiction under 42 U.S.C. § 405(g), and we affirm.

## Background

Plaintiff filed for benefits in May of 1998 alleging disability because of both diabetes mellitus and injuries to her low back and left leg occasioned by an on-the-job injury sustained in September of 1997. She was born in 1961 and was therefore classified as a younger individual. Although she had earlier reported she dropped out of school in the eleventh grade, at the hearing she testified she had only completed the eighth grade; the ALJ gave her the benefit of the doubt by classifying her as having only a marginal education. Her past relevant work has been food service industry-related and included jobs such as fast-food cook, fast-food counter helper, cashier, deli clerk, food service worker, waitress, and dishwasher.

---

[1] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c)(1) and (3).

Following her injury, plaintiff was treated with medication, physical therapy, and working at a light-duty level. Although she complained of some pain, in December of 1997 she was returned to work on unrestricted duty. After complaining of discomfort following an eight-hour work day in January of 1998, plaintiff was placed on sedentary duty, with those restrictions continuing into February. A bone scan and X-rays were negative.

Various doctors, consultive, treating, and specialists diagnosed or observed low back pain, diabetes under poor control, occasional (but inconsistent) limping, but no diabetic complications such as vision difficulties or numbing/tingling in extremities. One doctor was of the opinion plaintiff could be returned to work on light duty; another thought she had no impairment by AMA guidelines and that there was no objective basis to keep her off work. Several noted symptom magnification and noncompliance with medical instructions, and, indeed, one doctor terminated her from his care because of plaintiff's poor diabetes control and poor compliance.

Because in her November 1998 request for reconsideration of the initial agency denial of benefits, plaintiff claimed she was depressed and anxious, she was evaluated by a consulting psychiatrist, Dr. Sacks, in January of 1999. In his report, Dr. Sacks related that plaintiff appeared to be experiencing a major depression, which was probably a single episode. He noted she seemed able to

relate to other workers and supervisors and could understand and follow simple

instructions. He rated her global assessment of functioning (GAF) score at 60. [2]

R., Vol. 1 at 226.

Although Dr. Sacks considered her psychiatric impairment to be moderate

to marked, he thought she would probably benefit greatly from a trial on an

antidepressant. *Id.* He further noted she appeared to be experiencing secondary

gain from her daughter's handling of the household chores and thought plaintiff

both could and would become more active with medical control of her mood

disorder. *Id.* Although he expressed concern that her history of noncompliance

with her diabetes medication could affect compliance with antidepressant

medication, Dr. Sachs thought individual psychotherapy would benefit plaintiff.

*Id*. at 227.

Some months later, plaintiff began treatment with nurse practitioners

Martha James and Lorraine Cordova, [3] mental health counselor Rosemary

---

[2] The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000) p. 32. A GAF score of 51-60 indicates moderate symptoms, such as a flat affect, or moderate difficulty in social or occupational functioning. *Id.* at 34.

[3] Some confusion has resulted from counsel's references to these nurses as doctors, both before the ALJ and the Appeals Council. R., Vol. I at 241-42, 265, 268. In his district court brief, counsel also referred to Ms. James and Ms. Cordova as both nurses and doctors. R., Vol. 2 at 11, 12, 14, 17-19.

Gallegos, and psychiatrist Robert Jordan, M.D., each of whom submitted simple form evaluations suggesting plaintiff's mental limitations precluded her from any employment. The ALJ ultimately determined these opinions were "not helpful without some evidence of signs or findings to suggest those opinions." R., Vol. 1 at 19. He also noted some inconsistencies in the answers on these forms. *Id.*; *see also id.* at 242-46. Plaintiff herself indicated she began seeing Dr. Jordan in October of 1999, *id.* at 161, less than two months before the hearing.

The ALJ considered this evidence along with plaintiff's testimony at the hearing and that of plaintiff's daughter. He noted considerable inconsistencies between plaintiff's testimony and earlier statements regarding her symptoms and her vocational factors. He further noted inconsistencies between plaintiff's testimony and her daughter's. The ALJ found plaintiff not to be a credible witness and to have been exaggerating her statements regarding her symptoms.

Following testimony from a vocational expert, the ALJ concluded that plaintiff retained the residual functional capacity (RFC) for a wide range of light work with some physical and mental restrictions. *Id.* at 24. He then determined that she could perform her past relevant work as a fast-food worker, cashier/checker, and deli waitress as those jobs are generally performed in the national economy and therefore that she was not disabled. *Id.* at 24-25. The

Appeals Council declined plaintiff's request for review, *id.* at 6-8, and the magistrate judge upheld the Commissioner's decision. R., Vol. 2 at 60-62.

## Standard of Review

We review the agency's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and citation omitted). However, "[a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). In addition, the agency's failure to either apply correct legal standards, or show us it has done so, is also grounds for reversal. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). Finally, because evidence substantiality is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). For purposes of this appeal, we also note that "[a]bsent compelling reasons, we do not consider arguments that were

-6-

not presented to the district court." *See Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994).

## Discussion

On appeal, plaintiff contends that (1) the magistrate judge failed to review the agency's decision consistent with appropriate standards, and (2) the ALJ's decision was not supported by substantial evidence, nor were the correct legal standards applied. Within the second issue, plaintiff specifically contends that the ALJ failed to assess her RFC accurately, improperly determined she could return to her past relevant work, and erred in failing to give controlling weight to her treating physicians and clinicians.

I.     Magistrate Judge's Decision

Plaintiff first argues that the magistrate judge failed to review the record adequately or to analyze the ALJ's application of the correct legal standards. Based on this alleged inadequate review, plaintiff requests that we remand the matter for a new hearing before the ALJ. Aplt. Opening Br. at 13. Plaintiff misperceives the judicial function of this court. It is our role to determine whether substantial evidence supports the Commissioner's decision and whether that decision comports with relevant legal standards. *See Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996) ("[w]e review the [Commissioner's] decision" to determine if factual findings supported by substantial evidence in

record viewed as whole and whether correct legal standards applied). Thus, while we have no reason to question the magistrate judge's review of the record, we have independently conducted our own review. This issue is therefore without merit.

II.    ALJ's RFC Assessment

This argument covers both plaintiff's claim that the ALJ's RFC assessment was inaccurate and his finding that she could return to her past relevant work. At step four of the sequential evaluation, plaintiff has the burden of proving disability. *Musgrave v. Sullivan*, 966 F.2d 137l, 1376 (10th Cir. 1992).

Plaintiff argues that the ALJ failed to adequately evaluate her ability to return to past relevant work as discussed in *Winfrey,* which examined the three phases in making a step four determination:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity, and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Id.* at 1023 (citations omitted).

We conclude that the ALJ adequately supported his findings by substantial evidence as required. As outlined above, the ALJ first considered both plaintiff's physical and mental capacity in considerable detail, both in his decision, and in

-8-

his hypothetical question to the vocational expert (VE). R., Vol. 1 at 76-78. The ALJ made clear the medical evidence on which he relied in making those findings and additionally explained, with specificity, the medical opinions he discounted. Contrary to plaintiff's argument in her brief, *see* Aplt. Opening Br. at 15, the RFC is *not* a medical assessment, but rather an administrative one. *See* SSR 96-8p, 1996 WL 374184, at *2; 20 C.F.R. §§ 404.1545(a) and 404.1546. It further appears he relied primarily on the evaluations of medical consultants in determining plaintiff's RFC. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 n.3 (10th Cir. 2003). The findings made by program physicians and psychologists regarding an individual's impairments, including RFC, are treated as expert opinion evidence of nonexamining sources. *See* SSR 96-6p, 1996 WL 374180, at *1. Indeed the ALJ "must consider and evaluate any assessment of the individual's RFC by . . . other program physicians or psychologists." *Id.* at *4.

In addition, the ALJ evaluated plaintiff's subjective complaints of pain, most of which were described by her own treating doctors as a product of symptom magnification. In accordance with the requirements of *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995), the ALJ considered and discussed her testimony and general credibility, closely and affirmatively linking his findings to substantial evidence. As noted earlier, the ALJ further determined plaintiff not to be a credible witness, a finding she understandably does not challenge on appeal.

The ALJ also considered the demands of plaintiff's past relevant work, which he found (based on her own descriptions) to be beyond her present exertional RFC. However, the VE testified based on the Dictionary of Occupational Titles (DOT) (4th ed. 1991), that several of plaintiff's past relevant jobs are performed at the light level in the national economy. *See Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999) (agency accepts DOT's definitions as reliable evidence at step four of functional demands and job duties of claimant's past job as usually performed in national economy); *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1050-51 (10th Cir. 1993) (claimant bears burden of proving inability to return to particular former job or to former occupation as generally performed throughout national economy). Because these demands are compatible with the ALJ's RFC determination, including her physical and mental restrictions, the ALJ's determination that she could perform a limited number of her previous jobs is supported by substantial evidence. He further correctly determined she was only limited by her mental impairments to simple, repetitive work with basic instructions. This is the final phase in the *Winfrey* analysis, and the ALJ committed no errors in his determination.

Plaintiff argues that the opinion of consultive examiner Dr. Wellborn was that "due to persistent low back pain, poorly controlled diabetes, and obesity," her prognosis was extremely poor. Aplt. Br. at 17. She neglects to include, however,

that Dr. Wellborn also found she was extremely obese and would "continue to have significant pain until she loses a considerable amount of weight . . . and gets into better physical condition." R., Vol. 1 at 185. Dr. Wellborn also saw no objective basis to keep her from working and linked her poor prognosis to not only the uncontrolled diabetes, but also to symptom magnification. *Id.*

Likewise, plaintiff contends consultive examiner Dr. Simson "expressed his doubts that [she] would be able to return to work." Aplt. Br. at 17. To the contrary, Dr. Simson noted that her "likelihood for spontaneous recovery [would be] very slow and unlikely," that she engaged in some symptom exaggeration during the examination, that she needed "extensive dietary instruction and significant weight loss," and that the weight loss would "probably impact the control of her diabetes and her pain in a more positive manner than anything else." R., Vol. 1 at 204. There is nothing in this report, however, suggesting doubt that plaintiff is able to work.

III. Treating Physician's Opinion

In addition to considering the evidence of physical impairments, the ALJ also carefully considered the evidence of plaintiff's mental impairments. As to these issues, plaintiff contends the ALJ failed to give controlling weight to her statements of treating psychiatrist, Dr. Jordan, the nurse practitioners (occasionally misidentified as doctors), and plaintiff's therapist. We disagree.

The ALJ noted the inconsistencies among these sources. *See id.* at 19-21 (comparing care givers' opinions). It is the province of the ALJ to resolve evidentiary conflicts. *See Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000) (holding this court will not reweigh the evidence).

In declining to accord controlling weight to Dr. Jordan's opinion, the ALJ also noted the apparent length of plaintiff's treatment relationship with Dr. Jordan, including the lack of evidence that Dr. Jordan had ever examined plaintiff. Aplt. App., Vol. 1 at 20. The ALJ specifically noted that Dr. Jordan's opinions were not accompanied by a "single finding or observation to support any of the statements . . . that, in every category of [Affective and Anxiety Disorders, Listings 12.04 and 12.06] function, [her] limitations are so severe as to preclude any employment." *Id.* In addition, the ALJ found Dr. Jordan's opinion to be inconsistent with other substantial evidence in the record. *Id.* We conclude the ALJ adequately explained his reasons for declining to accept Dr. Jordan's opinions. *See Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Plaintiff argues that the ALJ erred in not recontacting Dr. Jordan "when [the ALJ] questioned the sufficiency of the medical evidence as it pertained to the assessments of Dr. Jordan and nurse practitioner Cordova." Aplt. Br. at 43. This argument was not raised in district court and we will not consider it for the first time on appeal. *Crow*, 40 F.3d at 324.

-12-

IV.     Subsequent Favorable Disability Determination

In her reply brief, in an apparent attempt to bolster the credibility of Dr. Jordan and nurse Cordova, plaintiff claims that a subsequent favorable Social Security disability determination, predicated on a determination that she cannot perform her past relevant work nor does she have the RFC for a significant range of sedentary work, was "based upon the treatment records of nurse practitioner Cordova and treating psychiatrist Robert L. Jordan." Reply Br. at 2. She further asserts that this subsequent decision, issued in September of 2002, found that her "mental and physical impairments had become severe enough to preclude her from engaging in any substantial gainful activity." *Id.* The decision of the second ALJ not only does not even mention Dr. Jordan or nurse Cordova, it noted that plaintiff's primary problems center on her diabetes mellitus with neuropathy. Aplt. App., Vol. 2 at 56. The favorable decision further recognized that although plaintiff's poor control of her diabetes "has been largely due to noncompliance with treatment," the condition has now caused irreparable damage including neuropathy in both lower extremities, lack of sensation in either foot, and the need for a walker for ambulation. *Id.* Moreover, the second ALJ gave considerable weight to her primary care physician, Dr. Morgan, whose evidence makes no mention of any mental issues, or at least none relied on for determining that plaintiff is now disabled. *Id*. Indeed, the ALJ simply concluded that her

-13-

disability was based on the fact that her "capacity for the full range of work has been significantly compromised by her nonexertional limitations." *Id*. at 57. Those limitations are not specifically described, but based on the balance of the ALJ's decision, there is no basis for assuming they were mental.

The judgment of the district court is AFFIRMED.

Entered for the Court

David M. Ebel
Circuit Judge