**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 8, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DIANA G. KERWIN,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,[*]
Commissioner of Social Security
Administration,

        Defendant-Appellee.

No. 06-6343
(D.C. No. CIV-05-1202-M)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[**]

---

Before **HENRY** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.

---

    Plaintiff Diana G. Kerwin appeals from the district court's order affirming

the Commissioner's denial of her application for disability benefits. "We review

the Commissioner's decision to determine whether the factual findings are

---

[*]    Pursuant to Fed. R. App. P. 43(c)(2), Michael J. Astrue is substituted for
Jo Anne B. Barnhart as appellee in this appeal.

[**]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

supported by substantial evidence and whether the correct legal standards were applied." *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). Ms. Kerwin argues the Commissioner provided an improper discussion and evaluation of consulting physicians' findings and opinions concerning her mental and physical limitations. We reverse and remand for further proceedings because the correct legal standards were not applied.

## *Background*

Ms. Kerwin asserts disability beginning on September 30, 2002, due to multiple mental and physical impairments. The Administrative Law Judge (ALJ) found that Ms. Kerwin's ability to work was not affected by her mental impairments of anxiety and depression, but was affected by the severe physical impairments of chronic obstructive pulmonary disease, degenerative disc disease, hypothyroidism, and hypertension. In spite of these physical limitations, the ALJ concluded Ms. Kerwin had the residual functional capacity (RFC) to perform light work and that she was capable of returning to her previous relevant work as a fast-food manager, file clerk, cashier, receptionist, dry-cleaner clerk, and newspaper carrier.

The ALJ therefore denied benefits at step four of the five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. His decision became the final decision of the Commissioner when the Appeals Council denied Ms. Kerwin's request for review. The district court affirmed the Commissioner's decision.

*Discussion*

Ms. Kerwin contends that the ALJ improperly rejected the opinions of Max M. Edgar, Ph.D, a psychologist who conducted a consultative mental examination, and Aaron Cates, M.D., an internist who performed a consultative physical examination. As a result, she contends, the ALJ formulated an incomplete RFC assessment.

*Mental impairments*

After examining Ms. Kerwin at the Commissioner's request, Dr. Edgar provided a detailed evaluation of his impressions of Ms. Kerwin and her responses to his inquiries. He described Ms. Kerwin's demeanor and affect as suggestive of psychomotor retardation and severe depression. His diagnosis was that Ms. Kerwin likely had a bipolar or schizoaffective disorder with severe major depression and some audio and visual hallucinations, an underlying personality disorder with possible learning difficulties, and possibly had post-traumatic stress disorder with panic related to childhood abuse, and extreme levels of psychosocial stressors. Dr. Edgar estimated Ms. Kerwin's Global Assessment of Functioning score at 30-40, opining that she "does not appear well enough to handle any kind of gainful employment" and "would need help in managing any funds." Aplt. App. at 251.[1]

---

[1]     A global assessment of functioning (GAF) score "is a subjective

(continued...)

Later, non-examining agency consultants conducted a mental RFC assessment based only on medical records and completed a psychiatric review technique (PRT) form.[2] The PRT noted a contrast between Ms. Kerwin's behavior at the examination performed by consultative internist Dr. Cates, when "[s]he was able to hear and understand conversation well," and her "description of hallucinations" during Dr. Edgar's examination. *Id*. at 276. Although it noted that Ms. Kerwin regularly takes Paxil prescribed by her treating physician for depression, the PRT observed that "[w]hile she complains of depression, anxiety and depression, she has never received mental health treatment." *Id*. The consultants found it telling that Ms. Kerwin was "able to fix sandwiches and visit with her family." *Id*.

The consultants concluded that Ms. Kerwin's mental functional capacity was not significantly limited, except for marked limitations in her ability to

---

[1](...continued) determination based on a scale of 1 to 100 of the clinician's judgment of the individual's overall level of functioning." *Salazar v. Barnhart*, 468 F.3d 615, 624 n.4 (10th Cir. 2006) (quotation omitted). "A GAF of 31-40 is extremely low, and indicates some impairment in reality testing or communication or major impairment in reality testing or communication or major impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id*. (quotation and alterations omitted).

[2] The forms were completed initially by Sally Varghese, M.D. (a psychiatrist) on October 18, 2002, and were reviewed by Margaret McKinney Ph.D. (a psychologist) on December 17, 2002.

understand and carry out short and simple instructions. According to the consultants, Ms. Kerwin was "able to perform simple tasks with routine supervision" and "relate to coworkers and supervisors for work[-]related matters." *Id.* at 262. In direct opposition to Dr. Edgar's opinion, they stated that Ms. Kerwin had "independ[e]nt living skills" and "nothing suggest[ed] she could not do other work." *Id.* at 263.

The ALJ conducted a hearing, at which Ms. Kerwin and a vocational expert testified. The ALJ then issued his decision. In evaluating the evidence, the ALJ emphasized the notations in the medical record that Ms. Kerwin tended to overstate her symptoms. He repeated the consultants' statement that she "has no history of mental health treatment," but mentioned that she took medication for depression. *Id.* at 14. In addition, he cited to the treatment record of an emergency room visit on October 18, 2000 (for foot pain of unexplained origin) which lacked indications of "mood swings, anxiety, depression, tension or memory changes." *Id.* at 15. Also of significance to the ALJ was that, in the year 2000, Ms. Kerwin was able to be a caregiver for her grandchildren during the daytime and for her ill father at night. All of these observations factored into the ALJ's determination that Ms. Kerwin's "complaints at the mental[-]status consultative exam were exaggerated, possibly in an attempt to generate evidence for her appeal." *Id.* at 14.

In the end, the ALJ implicitly rejected Dr. Edgar's report. Without mentioning Dr. Edgar's GAF assessment and related opinions on Ms. Kerwin's functional mental capacity, the ALJ found "only a moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation." *Id.* at 15. According to the ALJ, "[h]er limitations appear[ed] to be related to her physical condition, not due to a mental impairment." *Id.* at 14.

On appeal, Ms. Kerwin argues that the ALJ committed legal error by failing to acknowledge and consider several significant aspects of Dr. Edgar's psychological evaluation: the GAF assessment, diagnosis of possible underlying personality disorder, description of Ms. Kerwin's affect, levels of psychosocial stressors, and conclusion that Ms. Kerwin was incapable of any type of employment or even handling any benefit payments. To address this issue, we refer to basic precepts of social-security law.

"[A]n ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less" and a failure to do so "is reversible error." *Salazar v. Barnhart,* 468 F.3d 615, 621 (10th Cir. 2006). An ALJ "may not ignore evidence that does not support his decision, especially when that evidence is significantly probative." *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir.

-6-

2001) (quotation omitted); *see also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss . . . significantly probative evidence he rejects.").

Specifically applicable to Ms. Kerwin's case are our previous statements that "psychological opinion may rest . . . on observed signs and symptoms," *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004), and that an ALJ may not substitute his own judgment for that of a medical professional, *see Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996). Moreover, an examining physician's opinion is normally entitled to more weight than a non-examining physician's opinion. *See Robinson*, 366 F.3d at 1084 ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.") (citing 20 C.F.R. § 404.1527(d) and SSR 96-6p, 1996 WL 374180, at *2). Under these standards, the ALJ's determination is legally flawed. The ALJ essentially adopted most of the non-examining consultants' opinions without discussing the contrary opinions of Dr. Edgar, the examining consultant. This situation is not fully remedied by the ALJ's determination that Ms. Kerwin's statements to Dr. Edgar were not credible, based on indications in the medical record that Ms. Kerwin may exaggerate her physical symptoms, put forth less than maximal effort during testing, or provide

conflicting information.  We must remand this matter for further consideration of the medical evidence on Ms. Kerwin's mental impairments, using the proper legal standards.

On remand, the ALJ may decide that the record regarding mental impairments is insufficient and needs to be developed with additional evidence. *See Robinson*, 366 F.3d at 1084; *see also* 20 C.F.R. § 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").  In any event, the ALJ must discuss the probative aspects of Dr. Edgar's report and, if he again rejects its conclusions, give legally adequate reasons for doing so.

***Physical Impairments***

Ms. Kerwin argues that the ALJ incorrectly evaluated the report of Dr. Cates' consultative internist examination, particularly with regard to limitations in her use of her right wrist and hand and lack of a safe and steady gait.  Dr. Cates' report described his examination findings, including his opinion that Ms. Kerwin lacked a safe or stable gait without the use of a cane and had range-of-motion limitations in her back, neck, hip, knee, ankle, and shoulder, though some of "[t]his may be partially the patient's playing up her limitations."

Aplt. App. at 238. As for her hands and wrists, Ms. Kerwin had limited flexion and hyperextension of all fingers on her right hand, reduced grip strength, and an inability to manipulate objects or grasp tools with her right hand, but no right-hand atrophy. Also, he noted that Ms. Kerwin had great difficulty stepping off a curb outside and problems walking in the examination room. Dr. Cates' conclusion was that Ms. Kerwin "has multiple medical problems and does appear to be significantly limited in her ability to function normally on a daily basis." *Id.* at 240.

The ALJ's physical-impairment evaluation was similar to his mental impairment analysis. The ALJ focused on indications of Ms. Kerwin's inconsistent symptoms, shifting descriptions of activities, and exaggerated pain behaviors without mentioning the specific hand-and-wrist limitations or gait problems found by Dr. Cates. Other than his thoughts on Ms. Kerwin's credibility, the ALJ did not "provide specific, legitimate reasons for rejecting [Dr. Cates' opinion]," as required by the agency's regulations. *Doyal v. Barnhart* 331 F.3d 758, 764 (10th Cir. 2003). In reaching the RFC determination that Ms. Kerwin was capable of performing light work, the ALJ did not include any handling, fingering, or walking limitations.

An ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability. *Robinson*, 366 F.3d at 1083. Although "an ALJ is not required to discuss every piece of evidence," he

must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1009-10. And the absence of a explanation is of significance in Ms. Kerwin's case: all of her former relevant jobs involve frequent handling or fingering. *See Dictionary of Occupational Titles* §§ 185.137.010 (manager, fast-food services); 206.387-034 (file clerk); 211.462-014 (cashier-checker); 237.367-038 (receptionist); 290.477-014 (retail-sales clerk); 292.457-010 (newspaper carrier). Further, light-work positions require that an individual be able to stand or walk up to six hours in an eight-hour day. *See* SSR 83-10, 1983 WL 31251, *6 (1983).

On the issue of physical impairments, we remand for further consideration of Dr. Cates' report and, if necessary, development of additional evidence concerning Ms. Kerwin's hand and gait limitations.[3]

### *Conclusion*

The judgment of the district court is REVERSED, and this case is REMANDED to the district court with directions to REMAND to the Commissioner for further proceedings.

> Entered for the Court
>
> Robert H. Henry
> Circuit Judge

---

[3] Ms. Kerwin also claims that the ALJ's determination of her RFC is not supported by substantial evidence. Because this issue is interwoven with the ALJ's evaluation of Dr. Cates' report, we do not specifically address this argument.